IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARK ALAN HIMMELBERGER,      )
AIS #247568,                 )
                             )
          Plaintiff,         )
                             )
v.                           )      CIVIL ACTION NO. 2:10-cv-611-MHT
                             )
WILLIAM J. THORNTON,         )
                             )
          Defendant          )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Mark Alan

Himmelberger ["Himmelberger"], an indigent state inmate,[1] alleging that defendant William

J. Thornton ["Thornton"], an officer with the Montgomery Police Department,[2] acted with

deliberate indifference to Himmelberger's safety during his arrest by failing to provide him

his cane or assistance in walking while Himmelberger was handcuffed.  Himmelberger seeks

---

[1]Himmelberger was a detainee and not a convicted prisoner, consequently his constitutional protections arise from the Due Process Clause of the Fourteenth Amendment.  *See Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (per curiam).  Nevertheless, the court analyzes the claim using the standards applicable to claims under the Cruel and Unusual Punishment Clause of the Eighth Amendment.*Id.*; *see also Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995) ("states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights") (citation and quotation marks omitted).

[2]Himmelberger originally also named "Montgomery City Police Dept." as a defendant.  The court summarily dismissed the Montgomery Police Department on August 25, 2010, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  *See Order of Aug. 25, 2010 - Doc. 10, adopting Doc. 6* (recommendation to dismiss Montgomery Police Department because "A city police department 'is not a legal entity and, therefore, is not subject to suit or liability under section 1983.'  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).").

damages for the alleged violation of his constitutional right, and in his response to the special report he also seeks injunctive relief to repair his shoulder.  *Pl.'s Resp. - Doc. 18, at 4*.

Defendant Thornton filed a special report, a supplemental special report, and relevant supporting evidentiary materials, including affidavits and documentary evidence, addressing Himmelberger's claims for relief.   Himmelberger filed a response to the special report, including a sworn statement and documentary evidence.   Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned reports as a motion for summary judgment.  *Order of September 17, 2010 - Doc. No. 14*.  Thus, this case is now pending on the defendant's motion for summary judgment.   Upon consideration of the motion and the evidentiary materials filed in support thereof, the court concludes that the defendant's motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]
The party moving for summary judgment "always bears the initial responsibility of informing
the district court of the basis for its motion, and identifying those portions of the [record,
including pleadings, discovery materials and affidavits], which it believes demonstrate the
absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477
U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating
there is no dispute of material fact or by showing that the nonmoving party has failed to
present evidence in support of some element of its case on which it bears the ultimate burden
of proof.  *Id.* at 322-24.

The defendant has met his evidentiary burden and demonstrated the absence of any
genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with
appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.
*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324;
Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to
properly address another party's assertion of fact [by citing to materials in the record
including affidavits, relevant documents or other materials] the court may . . . grant summary

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and
deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision,
"[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c),
changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of
a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary
judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and,
therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. [] Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the defendant's properly supported motion for summary judgment, Himmelberger is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555,

4

1564 n.6 (11ᵗʰ Cir. 1997) (per curiam) (A plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11ᵗʰ Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11ᵗʰ Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11ᵗʰ Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74ᵗʰ Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11ᵗʰ Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11ᵗʰ Cir. 2004) ("Only

factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine

dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Himmelberger fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

### A. Relevant Facts

On the night of April 17, 2009,[4] defendant Thornton, an officer with the Montgomery Police Department, was dispatched to The Keys, a bar in Montgomery. *Def.'s Exhibit A to the Special Report (Thornton Aff.) - Doc. 11-3, at 1*. Employees there described a man who had been at the bar earlier and appeared to be so intoxicated that they refused to serve him. They watched him leave and get into a black truck with the price of the vehicle written in large numbers on the windshield. He struck a parked vehicle as he left the lot, but Thornton did not complete an accident report because the incident occurred on private property, and the owner said there was not enough damage to make a report. *Id.*

Later than evening, Thornton was running a radar on Atlanta Highway, and he observed a truck matching the one involved in the accident at The Keys. *Id.* at 2. According to the radar, the truck was speeding, and based on the information he received earlier,

---

[4]Thornton's affidavit indicates the date was April 17, 2010. The incident reports and other contemporaneous documents reflect a date of April 17, 2009. The date in the affidavit appears to be a scrivener's error, and the court treats the date to be 2009, not 2010.

Thornton believed the driver to be intoxicated.  Thornton stopped the vehicle, and the driver identified himself as Mark Alan Himmelberger.  Himmelberger did not have proof of insurance, Thornton saw an open container in the truck, and Thornton observed that Himmelberger "was clearly intoxicated."  *Id.*

Thornton asked Himmelberger to step out of the vehicle.  *Id.*  Thornton states that Himmelberger had a cane in his hand when he got out of the car, but he did not use it to walk. *Id.*  Thornton observed that Himmelberger walked on his own, following Thornton to the back of the truck, using the cane to gesture as he talked and not as a walking aid.  *Id.* Thornton was concerned that Himmelberger could use the cane as a weapon, "since it was clear that he didn't require it to walk."  *Id.*  Thornton asked Himmelberger for the cane, and when Himmelberger gave it to him, Thornton put it on the hood of his patrol car.  Thornton then administered one sobriety test, "the horizontal gaze nystagmus test which showed lack of smooth pursuit," and Himmelberger refused further tests.  *Id.; Def.'s Ex. A, Attach. 1 - Doc. 11-3, at 4-5.*

Based on Himmelberger's demeanor, speech, and actions, Thornton determined that Himmelberger was intoxicated, and he placed him under arrest.  *Id.*  Before his arrest, Himmelberger had been "fairly cooperative," but Thornton avers that "as soon as I handcuffed him and attempted to place him in my patrol car, he 'deadlegged' me.  He simply went limp."  *Id.*  Thornton, who was holding him, was surprised by the lack of cooperation, and they both fell to the ground.  *Id.*  Thorning unsuccessfully tried to get Himmelberger to

8

stand.  Himmelberger then said he needed his cane to walk, but Thornton disbelieved him because Thornton previously watched him get out of the truck and walk without the cane. *Id.*  According to Thornton, Himmelberger "had become extremely hostile," consequently Thornton chose not to uncuff him and let him use his cane.  *Id.* at 3.  Thornton called for assistance because, in his opinion, Himmelberger was passively resisting arrest, he would not walk or stand on his own, and Thornton could not lift him into the patrol car.  *Id.*

Officer Larvell Stewart, a police officer for the City of Montgomery, was patrolling in the area of Atlanta Highway on April 17, 2009.[5]  *Def.'s Supp. Special Report, Stewart Aff. 1 - Doc. 13-1, at 1.*  He saw emergency lights and Thornton stopped on the side of the road, and Stewart pulled over to offer assistance.  *Id.*  Stewart observed Himmelberger on the ground, and Thornton asked for help in lifting Himmelberger and placing him in the patrol car.  *Id.*  Stewart believed Himmelberger to be intoxicated based on the strong smell of alcohol and Himmelberger's demeanor.  *Id.*  According to Stewart, "Once Himmelberger was in the patrol car, he continued yelling and began kicking the door."  *Id.*  Himmelberger disputes Stewart's recollections and states they were not part of Thornton's affidavit.  *Pl.'s Supp. Resp. 1 - Doc. 22.*  Stewart saw no injuries on Himmelberger.  *Stewart Aff. 2.*  Thornton took Himmelberger to the station, while Stewart remained until the tow truck arrived.  *Id.*  Stewart had no further contact with Himmelberger.  *Id.*

---

[5]Stewart's affidavit also indicates the date was April 17, 2010.  The references to 2010 will be treated as 2009.

Himmelberger was carried into the booking room and upstairs to the jail because he would not walk. *Thornton Aff. 3.* Thornton administered a breathalyzer test and the reported result was 0.11g/210L, and the legal limit is .08g. *Id.; Def.'s Ex. A, Attach. 2 - Doc. 11-3, at 6.* According to jail records, Himmelberger was booked into the Montgomery County Jail, and he did not have a cane with him. *Def.'s Ex. B, Attach. 2 - , at 6; Id. Attach. 5 - Doc. 11-4, at 9.* The booking photo of Himmelberger does not show visible injuries to his face. *Id. Attach. 4 - Doc. 11-4, at 8.* The Arrest Report indicates "No Injuries" upon Himmelberger's release on April 18, 2009. *Id. Attach. 3 - Doc. 11-4, at 7.* Jail records do not indicate Himmelberger was among those injured prior to or after booking. *Id. Attach. 1 - Doc. 11-4, at 3-5.*

Himmelberger states that he is disabled as the result of a brain injury, and his vehicle[6] has handicap plates. *Pl.'s Resp. 1-2 - Doc. 18.* He used a wheelchair when he was in prison before being released in February 2009. *Id. at 3.* Himmelberger states that when he said he needed his cane to walk on April 17, 2009, Thornton said, "hold onto the side of the truck." *Id. at 2.* He disputes Thornton's statement that he followed Thornton to the rear of the truck, and he states that instead Thornton followed him as he held onto the side of the truck. *Id.* At the time of the arrest, Thornton told Himmelberger to turn around and put his hands

---

[6]Himmelberger states his truck was a Dodge Ram, but his insurance card was for a Chevy he recently sold, and Thornton incorrectly copied the insurance information for the report. *Pl.'s Resp. - Doc. 18, at 2.* The make of the vehicle and the alleged error in the officer's report are not material questions of fact relevant to the issue in this case. *See McCormick*, 333 F.3d at 1243.

behind his back to be handcuffed.  *Id.*  After handcuffing him, Thornton said, "let's go," and Himmelberger said he was disabled and asked to use his cane.  *Id. at 2-3.*  According to Himmelberger, Thornton said, "No, I got you," and indicated he would hold Himmelberger as he walked while handcuffed, but Himmelberger fell after two steps, landing on his shoulder to avoid hurting his face. *Id. at 3.*  Himmelberger states that Thornton did not offer him any assistance while he was down.  *Id.*  Himmelberger admitted on a complaint form that he then "verbally assaulted Cpl. Thornton's wife.  But that was only way I could get back at him for injuring my shoulder." *Id. Attach. 3 - Doc. 18-3, at 3.*

After arriving at the police station, Himmelberger states he "could walk but needed some assistance of a cane or to hold onto to someone or something." *Pl.'s Resp. - Doc. 18, at 3.*  Himmelberger held onto the walls to walk through the police station when he bonded out. *Id.* at 4.  On April 22, 2009, Himmelberger sought medical treatment for his shoulder, and he was prescribed Naproxen. *Id. - Doc. 18-1, at 1.*  Himmelberger did not have a cane when he left the jail, and the record is unclear as to what happened to his cane or if obtained another cane.

## B.  Plaintiff's Complaint

Plaintiff Himmelberger initially brought suit against defendant Thornton and the "Montgomery City Police Dept." *Complaint - Doc. 1, at 1, 2.*  He alleged that Thornton did not give him a cane or leave him an arm free to hold onto something to steady his walk.  He alleged that Thornton did not get another officer to carry him if Thornton did not want to

uncuff him.  He further alleged that the police department was liable "for not offering training for handling persons with disabilities."  *Id.* at 3.  Himmelberger sought "compensation for humiliation, pain and suffering from officer Thornton $500,000.00. From Montgomery City Police Dept. $1,000,000.00 for hiring Cpl. Thornton & not offering training in handling disabled persons."  *Id.* at 4.

In evaluating Himmelberger's pro se claims, the court has liberally construed his pleadings and held them to a less stringent standard that those drafted by attorneys.  *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  The court has construed the complaint as bringing a claim under 42 U.S.C. § 1983 that Thornton was deliberate indifference to Himmelberger's safety.  *E.g.*, *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (discussing section 1983 claim that official was deliberately indifference to a substantial risk of serious harm to an inmate). Although Himmelberger alleges he is disabled and Thornton failed to provide him assistance walking, Thornton at no time has treated the suit as one under the Americans with Disabilities Act ("ADA") or the Rehabilitation Act ("RA"), and the court has not construed the complaint to state a claim under the ADA or RA.  *E.g.*, *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1084 (11th Cir. 2007) (discussing applicability of the ADA and Rehabilitation Act to police conduct during an arrest).  Himmelberger's response to the defendant's motion for summary judgment confirms this interpretation.  In that response, (doc. # 18 at 4) Himmelberger states "I got injured due to . . . [Thornton's] deliberate

indifference to my safety."

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination by any such *entity*." 42 U.S.C. § 12132 (emphasis added). Because Thornton, the arresting officer, is not a "public entity," he cannot be sued under the ADA. *See Rylee v. Chapman*, 316 F. App'x 901, 905 (11th Cir. 2009) (per curiam) ("The ADA imposes *respondeat superior* liability on the employer for the discriminatory acts of its employees.").

Based on the course of the proceedings, Himmelberger is not suing a public entity, but rather he is suing Thornton in his individual capacity only under section 1983. *See Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1047-48 (11th Cir. 2008) (among factors to consider in determining the capacity in which a defendant is sued are the nature of the claims and defenses and whether punitive damages are sought). Himmelberger's caption refers to Thornton by his individual name and not his official title. *See id.* at 1048 (consider whether caption referred to defendants as individuals or also listed their titles). In addition, the amount Himmelberger initially sought–$500,000 for "humiliation, pain, and suffering"–is more akin to a request for compensatory damages plus punitive damages, and punitive damages under section 1983 are available only in an individual capacity suit. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Young Apartments, Inc.*, 529 F.3d at 1047 (consider whether punitive or compensatory damages sought).

13

Himmelberger also originally sought $1,000,000.00 from the "Montgomery City Police Department," which could not be awarded as punitive damages under section 1983, *see id.*, but as will be discussed, other factors from the course of the proceedings suggest Himmelberger meant to sue Thornton in his individual capacity only under section 1983.

Thornton's focus on a qualified immunity defense, which is available only against individual liability, demonstrates that he has treated this suit as one against Thornton in his individual capacity. *See Young Apartments*, 529 F.3d at 1047-48 (listing qualified immunity defense as a particular indicator that defendants understood plaintiff was suing them in their individual capacity); *Def.'s Special Report - Doc. 11 at 3-5.* Himmelberger has not clarified in his responses to Thornton's reports that he meant to sue Thornton in his official capacity as well as individual capacity. Himmelberger instead has focused his argument and allegations on Thornton's individual actions. *Pl.'s Responses - Doc. 18 & Doc. 22.*

A suit against Thornton in his official capacity would have been the same as a suit against his employer, a public entity. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (a suit against a municipal officer in his or her official capacity is "simply another way of pleading an action against an entity of which an officer is an agent.") (quotation marks and citations omitted). Himmelberger originally did include as a defendant the "Montgomery City Police Department" for hiring Thornton and failing to train him properly, and under certain circumstances, a municipality may be liable for inadequate training. *E.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of*

14

*Canton v. Harris*, 489 U.S. 378, 387  (1989).  If Himmelberger meant to sue Thornton's employer based on a failure-to-train theory or under the ADA, however, Himmelberger could have objected or moved to amend the complaint when the court recommended that the Montgomery Police Department be dismissed as an improper defendant.  He did not.  *See Order of Aug. 25, 2010 - Doc. 10, adopting Doc. 6* (recommendation to dismiss Montgomery Police Department because "A city police department 'is not a legal entity and, therefore, is not subject to suit or liability under section 1983.'  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).").   At this stage of the proceedings, Himmelberger cannot add a new theory of relief.  *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (refusing to allow plaintiff to raise new basis for a claim at summary judgment stage). Based on a liberal construction of the pleadings and the course of the proceedings, therefore, the court treats Himmelberger's action as one under 42 U.S.C. § 1983 against Thornton in his individual capacity for deliberate indifference to Himmelberger's safety.

## C.  Qualified Immunity Standard

Thornton argues he is entitled to qualified immunity.  Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982));  *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (same). Qualified immunity is not merely a defense against

liability but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citation omitted). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Thornton was acting within the course and scope of his discretionary authority when the incident complained of occurred. Plaintiff Himmelberger must, therefore, allege facts that, when read in a light most favorable to him, show that Thornton is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

In order to satisfy his burden, a Plaintiff must show two things: (1) that Defendant committed a constitutional violation and (2) that the constitutional right Defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). Courts now have discretion to determine the order in which the two prongs of Plaintiff's burden of proof are analyzed. *Pearson*, 555 U.S. at 236 (Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case hand."). "Thus, the qualified immunity standard is broad enough to cover some mistaken judgment, and it shields from liability all but the plainly incompetent or those who knowingly violated the law." *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) (citations and quotation marks omitted). The court, therefore, analyzes whether Thornton violated Plaintiff's constitutional rights.

16

### D. Thornton's Treatment of Himmelberger

An official may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A constitutional violation occurs only when a plaintiff establishes the existence of  "a substantial risk of serious harm, of which the official is subjectively aware,  . . . and [that] the official does not respond[] reasonably to the risk'. . . ."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*) (quoting *Farmer*, 511 U.S. at 844).  Thus, in order to survive summary judgment on this claim, plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam).

The affidavits filed by defendant address the allegations made by Himmelberger.  *Def.'s Special Report Ex. A - Doc. 11-3; Ex. B - Doc. 11-4; Def.'s Supp. Special Report -*

17

*Doc. 13-1.*  A thorough review of the evidentiary materials filed in this case demonstrates that these affidavits are corroborated by the objective records compiled contemporaneously by jail staff in the normal course of business.  *Def.'s Special Report Ex. A - Doc. 11-3, at 4-6; Ex. B - Doc. 11-4, at 3-9.*  Under the circumstances of this case, the court concludes that defendant Thornton's acts did not violate Himmelberger's constitutional rights.

Himmelberger provided no evidence other than his own statements that he had a medical condition causing him difficulty in walking.  Even assuming Himmelberger had a medical condition, he admits that he "could walk but needed some assistance of a cane or to hold onto to someone or something."  *Pl.'s Resp. - Doc. 18, at 3.*  The undisputed record demonstrates that defendant Thornton did offer Himmelberger assistance in walking while he was handcuffed.  Whether Himmelberger fell because he was incapable of walking or "went limp" in passive resistance to arrest, Thornton acted reasonably in getting assistance to move Himmelberger when he did not walk on his own.  Given Thornton's and Stewart's observations of Himmelberger's intoxication and violent behavior, it was reasonable for Thornton not to give Himmelberger a cane that could be used as a weapon.  Himmelberger has failed to present any evidence which indicates that Thornton knew that the manner in which he treated Himmelberger created a substantial risk to Himmelberger's health and that, with this knowledge, Thornton consciously disregarded such risk.  In other words, the undisputed evidence does not create a genuine dispute whether Thornton chose to ignore a substantial risk of serious harm to Himmelberger.  *See Carter*, 352 F.3d at 1349.  Because

18

Himmelberger cannot establish a constitutional violation, Thornton is entitled to qualified immunity.  *See Hope*, 536 U.S. at 739 (officer's conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known").   No reasonable trier of fact could return a verdict in Himmelberger's favor on his claim.  *See Greenberg,* 448 F.3d at 1263. Consequently, summary judgment is due to be granted in favor of defendant Thornton.  *See id.*; Fed. R. Civ. P. 56(a).

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendant's motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendant.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that **on or before July 24, 2013**, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the

District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 10th day of July, 2013.


            /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE